Milligan, J.,
delivered the opinion of the Court.
This was a bill brought by complainant, in the Common Law and Chancery Court of the City of Memphis, to set aside a deed of conveyance, executed by her husband, Charles K. Gillespie, under a power of attorney from her, made during coverture.
The Chancellor dismissed the bill, in the Court below, and an appeal, in error, is prosecuted to this Court.
The facts necessary to be noticed, and about which there is no controversy, are briefly as follows: Many years ago, James P. Taylor, the father of complainant, died, seized of a large landed estate, lying in different Counties of the State of Tennessee, which, on his death, descended to complainant and her two brothers, Nathaniel G. and Alfred M. C. Taylor; among which, was one tract of six hundred and ten acres, in Shelby County; to recover one third of which, this bill was filed.
In 18 — , the complainant intermarried with Charles *634 K. Gillespie, and by whom she bad issue born alive; and to whom — during her coverture — on the 13th of June, 1847, she and her brothers jointly executed a power of attorney, authorizing and empowering him “to sell and convey any and all lands in Tennessee,” which descended to them from their fathér or mother. This power is general, and contained no limitations as to price, or conditions in the terms of the sales contemplated under it.- Acting under this authority, which was duly acknowledged under a privy examination of the complainant, and registered, the attorney in fact, on the 14th of March, 1848, sold, and for the consideration of $7,625, as appears on the face of the deed, conveyed the six hundred and ten acre tract, in Shelby County, to Joseph T. 'Watkins, and the defendant, A. B. Worford. The deed was duly signed, and acknowledged by the attorney in fact, and thereafter regularly registered in Shelby County.
Watkins failed to pay his part of the purchase money, and on a bill filed, by the attorney in fact, to enforce the vendor’s lien, his interest in the land was sold, and the defendant, Worford, became the purchaser, and now claims title to the whole tract.
Subsequently, in April, 1850, the attorney in fact, Charles K. Gillespie, abandoned his wife; and she af-terwards filed her bill in the Chancery Court at Jones-boro, for a divorce, on the grounds of malicious absence. The bill was heard, and on the 14th of May, 1859, a decree pronounced, dissolving the bonds of matrimony, and restoring her to all the rights and privileges of a feme sole. Thereupon this bill was *635 filed, to set aside the conveyance, executed by her husband, and attorney in fact, during her coverture, so far as her rights were affected by it, and for par-, tition of the land.
The defendant answered, and substantially admitted the facts as charged in the bill, but relied on his deed, as conveying an absolute estate in the land, or at least, the life estate of the husband, as tenant by the courtesy initiate.
Two propositions have been insisted on in the argument here, which have been enforced on the one side, and resisted on the other, with much research and ability on both sides.
1st, A feme covert, under the Statutes of this State, has no authority of law, to make a valid power of attorney to any one, much less to her husband, to convey her estate in fee, in lands cast upon her by descent.
2d, If a tenant, by the courtesy initiate, sell and convey in fee, and, afterwards, his wife obtain a divorce a vinculo, the estate of the tenant, by the courtesy initiate, is thereby terminated in his vendee.
1. In support of the first proposition, It is insisted, that, under the Act of 1833, ch. 92, which is amend-atory of the Act of 1831, ch. 90, the power of - disposal, by a feme covert, of her freehold estate, as it existed under the Act of 1715, ch. 28, is pxtended and so enlarged, as to authorize her to execute, under the forms of law prescribed, a power of attorney to her husband, or, jointly with him, to any other per *636 son; which would authorize such agent, to sell, and, by deed, convey a valid title to her real estate.
To this proposition we are unable to assent. The Acts of 1831 and 1833, construed together, confer no new or additional power upon feme coverts, to pass their freehold estate, which they did not possess, under the Act of 1715; nor do they, in any substantial respect, change the mode of conveyance. The mode of conveyance by deed, jointly executed by husband and wife, accompanied by the private examination of the wife, substituted, under the Act of 1715, instead of fine and common recovery at common law, remains unchanged, by all the subsequent legislation' on this subject, in the' State. The first section of the Act of 1833, in terms, recognizes this mode of conveyance; and, by no just rule of interpretation, can the phrase, “oilier instruments of writing executed by husband and wife,” occurring in the third section, be construed to refer to and include the words, “all powers of attorney, authorizing the conveyance of real estate,” employed in the first section of the Act of 1831.
The- object of the Acts of 1831 and 1833, was not to enlarge the powers of feme coverts, to dispose of their real estate, or to create any new method of disposal, or, in any manner, to alter or substantially change the recognized formula of doing so; but it was to correct the most obvious defects in the registration laws, under which, in the language of the preamble to the Act of 1831, “numerous frauds were daily and secretly practised;” and, at the same time, *637 to afford an easy and certain mode of taking the probate, or acknowledgment of deeds and other instruments, required by law, to be registered, either in or out of term time, before the Clerks of. the County Courts, instead of in open Court, as theretofore.
The power of feme coverts to dispose of their freel hold estate, is not changed by these Statutes, or any new or additional mode of doing so created; and the Courts cannot now do, by construction, indirectly, what the Legislature has failed to do directly. The only mode recognized by our law, is, by solemn deed, jointly executed by husband and wife, with the privy examination of the wife.
This doctrine is fully recognized as the settled law of the State, as it has been repeatedly held, and is appropriately illustrated in the case of Cope et al. vs. Meek et al., 3 Head, 387. In that case, the Court says: “By the common law, a conveyance of a feme covert, except by matter of record, was absolutely void. The only mode by which she could convey, was by fine and common recovery:” 2 Kent’s Com., 150.
“These modes of passing the freehold estate of the wife, were never in force in our State. The Act of 1715, ch. 28, substituted a deed jointly executed by husband and wife, and acknowledged in the form prescribed, instead of the common law modes of conveyance; and in no other way can the wife’s estate pass, under our law. It is indispensable, that the husband shall be a party to his wife’s conveyance. She has no power, under the Statute, to convey by her *638 own deed; and such a conveyance is simply a nullity:” 2 Kent’s Com., 154; 2 Story’s Eq. Jur., secs. 1891, 1892.
This case, although not a direct authority on the power of a married woman to do by attorney, what she can only do by joint deed with her husband, is, nevertheless, incidentally conclusive of it. It settles the law, that there is but one way in which a feme covert can 'dispose of her real estate — and that is, by deed jointly executed with her husband, according to the prescribed form of the Statute; and that being so, it necessarily follows, that she cannot empower an agent or attorney, to do what, by Statute, she is bound to do in person.
But, upon principles well established, a married woman, ordinarily, is incapable of appointing an agent, or an attorney, for any purpose, except under special circumstances: Story on Agency, sec 6, and note 3. And this power of appointment, in special, and exceptional cases can never be exercised, when the act to be done, is required by Statute to be done by the feme covert, in person and for herself: lb., sec. 13 — particularly note 2; 2 Kent’s Com., 153, 154, and note C, with authorities there cited.
Judge Story, in further commenting on this principle, says: “Now, by the general principles of law, a married woman is, during her coverture, disabled from entering into any contract, respecting her real property, either to bind herself or to bind her hehs; and this disability can be overcome only, by adopting the pre- *639 else means, allowed by law to dispose of her real estate, as in England, by fine, and in America, by solemn conveyance: 2 Story’s Eq. Jur., sec. 1391.
We are, therefore, of the opinion, Ahat a feme covert cannot, under our Statutes, execute a power of attorney, either to her husband or to any other person, by which such agent or attorney, can lawfully sell, and, by deed, convey, the lands of the feme covert to a third party; and that the deed executed in this case by Gillespie, as the attorney of his wife, was inoperative to pass the title in fee, to the one-third undivided interest in the land therein described, which descended to, and belonged to, complainant. •
2. But a more difficult and important question is presented in the second proposition, which we will proceed to notice. This proposition, as already stated, is: If a tenant, by the courtesy, sell and convey the lands of his wife, in fee, and afterwards, she obtains a divorce from the bonds of matrimony, does this divorce terminate the estate of the tenant by the courtesy, in his vendee?
An estate by the courtesy of England, is purely the creature of the law, and arises when a man marries a woman seized of an estate of inheritance in fee simple, or fee tail, and has, by her, issue born alive, which was capable of inheriting her estate. “In this case,” says Blackstone, “he shall, on the death of his wife, hold the lands for life, as tenant by the courtesy:” 2 Blackstone’s Oom., 126.
In order to complete the title by courtesy, the presence of four circumstances is necessary, viz: Marriage, *640 seizin of tbe wife, issue, and death of the wife. The marriage must be lawful and valid, in law. When it is void, the husband does not acquire a right to be tenant by the courtesy; yet, if it be only voidable, and is not avoided during the life of the wife, the husband will be tenant by the courtesy, for no marriage will be annulled after the death of either party: Shelford on Marriage and Divorce, 478-9.
The seizin of the wife, at the common law, must be an active seizin, or possession; but in more modern times, both in this country and in England, the rigor of the common law rule has been greatly relaxed; and in this State, it is well settled, that a seizin in law, or constructive seizin of wild, or other lands, is sufficient to create a title by the courtesy: McCorrey vs. King’s Heirs, 3 Hum., 207; Guión vs. Anderson, 8 Hum., 298.
On the birth of issue, born alive, and capable of inheriting the estate, the husband instantly becomes tenant by the courtesy initiate, with power to charge the lands, and receive the emblements, etc.; but his estate is not consummate until the death of the wife, wdiieh completes his title as tenant by the courtesy, of England: 2 Blackstone’s Com., 128; Eoper on Husband and Wife, vol. 2, p. 5.
The nature of this estate is peculiar, not only on account of the seizin, but the incidents that arise from it, and the manner in which it may be defeated. The estate, although springing out of, and dependent upon, the marriage and seizin of the wife, only vests in the husband, on the birth of issue capable of inheriting; and when once vested, it was not supposed to be de *641 termined by the subsequent death or coming of age of the infant: 2 Blackstone’s Com., 127. It is applicable alike to after acquired lands by the wife, as well as those owned at the time of her coverture. By the marriage, ' the husband acquires, and during the marriage, enjoys, a freehold interest in his wife’s real estate, during their joint lives, both being seized in her right by entirety, the effect of which is, to put the ownership for the coverture entirely in the husband’s power. He can, as a consequence, alienate this ownership at pleasure; and his conveyance will pass the freehold, without the wife’s co-operation: McQueen on Husband and Wife, 27.
The ultimate property, or fee of the estate, by virtue of the husband’s title by courtesy, is not vested in him, but remains in the wife, subject to the husband’s rights; and it cannot be parted with by the separate action of the wife during coverture, but must be passed, by our law, under a deed jointly executed by husband and wife, with the private examination of the wife, or recognized by the forms of our Statute: Ibid.
This peculiar estate, although limited to the life of the husband, after lawful marriage, seizin of the wife, and issue, which, by possibility, may inherit the estate, is a well defined freehold estate in the husband, held in right of his wife, over which he possesses the power of alienation; and which, prior to our Act of 1849-50, ch. 36, could be seized and sold by his creditors. But it may be forfeited, or discontinued — as, at the common law, by the birth of a posthumus son, brother to the wife, who has the right of entry; or the wife’s attainder of treason, after marriage, and before the birth of issue: *642 Roper on Husband and Wife, 48. In like manner, a divorce a vinculo matrimoni, granted in tbe spiritual Courts, would defeat tbe courtesy of tbe husband; so, also, a dissiezin of the wife, or any other thing which defeated the title in the wife: Blackstone’s Com., 435, 440.
Rut, under our law, when divorces from the bonds of matrimony are frequently granted, for causes ensuing after the marriage, and in ño way affecting the validity of the original contract, does this result follow? Under the ecclesiastic law, a divorce a vinculo could only be granted on the ground that the marriage was void abi-nitio; and courtesy, in such cases, did not attach, because there never was a lawful marriage. In this State, and, in fact, in this case, the marriage was valid; and after the title by courtesy vested in the husband, the bonds of matrimony were severed, by the solemn judgment of the Chancery Court, for supervenient cause. By that act, what became of the husband’s courtesy? The estate, before the divorce, was joint, and held by entireties. What, now, are their respective rights, in regard to it?
This Court, in the case of Ames vs. Norman et oil., 4 Hum., 683, in an analagous case, has most appropriately said: “They are no longer one legal person: the law itself has made them ‘twain.’ They are no longer capable of holding by entireties: the relations upon which that tenancy depends has been destroyed; the one legal person resolved, by judgment of law, into two distinct individual persons, having in the future no relations to each other; and with this change of *643 their relations, must necessarily follow a corresponding change of the tenancy dependent upon the previous relation. As they cannot longer hold hy joint seizin, they must hold hy moities. The law in destroying the unity of persons between them, has, hy necessary consequence, destroyed the unity of seizin, in respect to their joint estate; for independent of the matrimonial union this tenancy cannot exist.”
Admitting the consequences to • follow, on the severance of the marriage relation, laid down in the above recited case, (and we are unahle to see any valid reason why such results would not, of necessity, flow from the divorce, (what effect do they have upon the title in this case, vested hy the husband’s deed in the defendant? The deed, we have held, was inoperative to pass the fee of the complainant; hut it is admitted it was effective to pass the husband’s estate, by courtesy, up to the time of the dissolution of the bonds of matrimony, blow, does the judgment of the law, divorcing the parties, ipso facto, work a discontinuance of the husband’s courtesy, and a de-feasance of the title vested in his alliance? We think not. The marriage was lawful, the seizin of the wife complete, and the issue inheritable. Nothing remained to make the husband’s title hy courtesy consúmate, hut the death of the wife. It began with the birth of issue, and although initiate, it was the subject of transfer, and might he charged with the debts of the husband; and before the Act 1849-50, seized and sold hy his creditors. A divorce, a vinculo, *644 for cause arising subsequent to the vesting of the title by courtesy, and in no degree affecting the validity of the original marriage contract, cannot be held to defeat the courtesy, especially in the vendor. The consequences of such a doctrine would be fraught with unhappy results to society. The just expectations of purchasers would be disappointed, and their estates suddenly terminated, through the intervention of a .cause of which they could have no notice, and against dhe .existence of which every legal presumption arises.
The defendant became vested by his purchase, with the right of the husband, as it existed at the time of the .sale; and he holds the estate free from all future accidents and contingencies, that might have affected it, as against the husband, had the estate remained in him.
We are, therefore, of the opinion, that the deed executed by Charles Gillespie, for himself, and as attorney, in fact, of the complainant and others, was operative to pass Gillespie's title as tenant by the courtesy, and vested the purchasers with an estate of freehold in the one-third undivided interest, in the lands therein described, determinable on the death of the tenant by ithe courtesy.
In the view we have taken of this case, we do not deem it necessary to intimate any opinion in relation to the irregularities insisted on in argument, as apparent on the face of the deed. N. G. & A. M. C. Taylor are not parties to this bill, and' the objections cannot, in any event, be made availing as to Gillespie.
*645 The bill iu this case, was properly filed so far hnly as it seeks to have the deed set up and relied on by the defendant as an assurance of title in fee, removed as a claim upon complainants’s title in remainder, after the termination of the estate by courtesy.
The decree of the Chancellor, dismissing the bill, will be modified in this respect, and a final decree entered here in conformity to this opinion.